IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J & J SPORTS PRODUCTIONS, INC,  :
:
    Plaintiff,  :
:
v.  :
:
K. CHRISTOPHER EDWARDS AND  :   CIVIL ACTION NO.
COMPANY, INC., and MKD  :   1:15-CV-3206-AT
NIGHTLIFE VENTURES, LLC D/B/A  :
KRAVE LOUNGE F/K/A LUXE  :
ULTRA LOUNGE  :
:
    Defendant.  :

## **ORDER**

On May 13, 2016, the Court denied without prejudice Plaintiff's Motion for Default Judgment as to Defendant K. Christopher Edwards and Company, Inc. ("Order," Doc. 14.)

In that Order, the Court stated that it "[was] concerned that Plaintiff may have failed to properly serve Defendant." (Order at 1.) As Plaintiff acknowledges, it had attached evidence to its Motion for Default Judgment indicating only that "Plaintiff attempted to serve Defendant at the office of its Registered Agent on one occasion." (Doc. 17 at 3; Order at 2.) The Court also noted that Plaintiff had not indicated if it had attempted to serve Defendant at its principal office address, which was listed on the Secretary of State's website. However, the Court expressly noted that it had "no information as to whether or not Defendant's

principal office address could be found on the Georgia Secretary of State website at the time Plaintiff attempted service [and that] Plaintiff is free to bring that fact to the Court's attention." (Order at 3 n. 1.)

Plaintiff has now filed a Motion for Reconsideration ("Motion") (Doc. 17.) of the Court's Order denying the Motion for Default Judgment without prejudice. Plaintiff brings two new pieces of evidence to bear in support of its Motion. First, it attaches to its Motion an Affidavit of Diligence signed by the process server and a Proof of Service indicating that Plaintiff attempted to serve Defendant at the address of the establishment where the illegal broadcast occurred. (Doc. 17-1.) Neither document had previously been submitted to the Court, but together they indicate that Plaintiff attempted to serve Defendant *nine* times at the establishment in question and at its registered agent's address, not just once.

Second, Plaintiff responds to the Court's invitation to submit evidence about whether Defendant had updated the information regarding its principal office address with the Georgia Secretary of State prior to Plaintiff's attempts at service. Plaintiff provides records from the Georgia Secretary of State indicating that Defendant only updated its principal office address on January 20, 2016. (Doc. 17-1 at 14-15.) Plaintiff filed its complaint on September 11, 2015, and had 120 days to serve Defendant under the Federal Rules in effect at that time. Fed. R. Civ. P. 4(m) (2015.) Thus Plaintiff would have had to accomplish service by January 11, 2016 – before Defendant updated its principal office address. Based on this evidence, the Court is satisfied that service on the Georgia Secretary of

State was proper, because Plaintiff attempted to serve Defendant nine times, including four times at the office of its registered agent, and because Plaintiff has provided evidence that it would not have known to or been able to serve Defendant at its principal office address within the time provided for by the Federal Rules. Fed. R. Civ. P. 4(e)(1); O.C.G.A. § 9-11-4(e)(1). The Court therefore **GRANTS** Plaintiff's Motion for Reconsideration [Doc. 17] and turns to the merits of Plaintiff's Motion for Default Judgment.

I. STANDARD FOR ENTERING DEFAULT JUDGMENT

When a party fails to plead or defend against a plaintiff's complaint for affirmative relief, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). A default then constitutes admission of all well-pleaded factual allegations contained in the complaint. *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A grant of default judgment in favor of the plaintiff is therefore warranted only if there exists "a sufficient basis in the pleadings for the judgment entered." *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (quoting *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206). In addition to the pleadings, a court considering a motion for default judgment may also rely on evidence such as affidavits and declarations. *Id.*

II. ALLEGATIONS IN THE COMPLAINT

According to the Complaint, Plaintiff is a "commercial distributor of sporting events" who obtains permission to distribute broadcasts of said events

3

and then enters into agreements with individual venues to publicly exhibit the broadcasts to the venues' patrons. (*See* Compl. ¶¶ 9-10.) As part of this business, Plaintiff obtained the exclusive nationwide television distribution rights to the *"The One" Floyd Mayweather, Jr. v. Saul Alvarez – WBC Light Middleweight Championship Fight Program* telecast (the "Program"), which took place on September 14, 2013. (Compl. ¶ 8.) Plaintiff then entered into sublicensing agreements with various commercial entities throughout North America, granting them the right to publicly exhibit the Program to the patrons within their respective establishments. (*Id.* ¶ 9-10.)

Defendant did not contract with Plaintiff to pay the necessary sublicense fee required to obtain the Program for its commercial establishment. (*Id.* ¶¶ 11-12, 21-22.) Nonetheless, Defendant showed a portion of the Program at Krave Lounge (formerly known as Luxe Ultra Lounge) an establishment it runs, manages, and exercises control over, on the night of September 14, 2013, with full knowledge that the Program was not to be intercepted, received and exhibited by it because it did not have authorization. (*Id.* at ¶¶ 6, 11-13.) Specifically, investigator Evie Kilgore attests that on the night of September 14, she personally witnessed Defendant exhibiting the 10th Round of the pre-bout match between Ishe Smith and Carlos Molina. (Kilgore Aff., Doc. 13-2 at ¶ 4.) According to Kilgore, she counted 40 patrons at the establishment. (*Id.*) Plaintiff does not allege whether Defendant intercepted the broadcast via a satellite or cable.

Plaintiff also attaches to its Motion for Default Judgment an affidavit of its President, Joseph M. Gagliardi.  Gagliardi explains that Plaintiff charges a sublicense fee to broadcast the Program based on the capacity of the establishment.  "For example," Gagliardi states, "if a commercial establishment had a maximum fire code occupancy of 5 persons, the commercial sublicense fee would have been $2,200."  (Gagliardi Aff. ¶ 8, Doc. 7-2 at 21.)  According to Investigator Kilgore, there were seventy (70) patrons in the club at the time of the broadcast. (Kilgore Aff., Doc. 13-2 at ¶ 3.)

Plaintiff commenced this action against Defendant seeking relief for Defendant's alleged violations of the Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq.* and the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq.* (Compl. (Doc. 1) ¶ 1.)  On November 30, 2015, Plaintiff filed an unexecuted return of service stating that there was no activity and no response at the address of Defendant's registered agent, and that the doors were locked, there was no access to the building, and no signage.  (Doc. 9.)  Plaintiff filed an Affidavit of Diligence and additional unexecuted return of service indicating that Plaintiff attempted to serve Defendant nine times in October and November of 2015.  On January 5, 2016, Plaintiff served Defendant with the Summons and Complaint by substituted service upon the Georgia Secretary of State's office.  (*See* Doc. 11.)  Defendant's answer was due twenty-one days later.  Fed. R. Civ. P. 12(a)(1)(i).  Defendant did not file an answer.  On January 6, 2016, upon Plaintiff's motion

(Doc. 12.), the Clerk entered default as to Defendant. On January 21, 2016, Plaintiff filed a Motion for Default Judgment. (Doc. 13.)

## III. DISCUSSION

Plaintiff asserts that Defendant is liable for unlawfully receiving or intercepting the Program broadcast under both 47 U.S.C. § 553 and § 605. Both sections 553 and 605 prohibit the unlawful receipt or interception of certain communications. Section 553(a) prohibits the interception or receipt of any communications service over a cable system without proper authorization. 47 U.S.C. § 553(a). Section 605(a) is similar but applies to radio communications such as satellite television signals.[1] 47 U.S.C. § 605(a); *see DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("'[C]ommunications' protected by § 605(a) include satellite television signals.").

---

[1] Section 605(a) of provides in relevant part:

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the . . . contents . . . thereof, except through authorized channels of transmission or reception . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents . . . of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the . . . contents . . . of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

6

While Section 553 clearly covers only cable transmissions,[2] the Eleventh Circuit has yet to weigh in on a circuit split over whether section 605 applies to piracy of a cable service as opposed to *only* radio transmissions. *Compare TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 202, 207 (3d Cir. 2001) (holding that § 605 applies only to the unlawful interception of radio transmission) *and United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996) (same) *with International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996) (holding that § 605 applies to both radio and cable interceptions). However, this Court has previously addressed this issue and concluded that section 605 does not impose liability for intercepted or unauthorized receipt of cable transmissions. *J & J Sports Prods., Inc. v. Kim, et al.*, No. 1:11-cv-2388-AT (N.D. Ga. Apr. 24, 2012) (Doc. 13).[3]

Plaintiff's Complaint does not allege whether Defendant unlawfully intercepted the Program broadcast via satellite (in violation of section 603) or

---

[2] Plaintiff states, without citing any cases, that "[c]ertain courts have also held a private party plaintiff may recover civil damages pursuant to [47 U.S.C. § 553] where end-user violators unlawfully obtained a proprietary broadcast via satellite . . . ." (Doc. 13-2 at 4.) The plain language of section 553(a) dictates otherwise. 47 U.S.C. § 553 ("No person shall intercept or receive or assist in intercepting or receiving any communications service *offered over a cable system*, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." (emphasis added)).

[3] The Plaintiff in this case may seek to recover under *either* § 605 or § 553, but not both. *See Joe Hand Promotions, Inc. v. Mujadidi*, No. C-11-5570-EMC, 2012 WL 3537036, at * 3 (N.D. Ca. Aug. 14, 2012) ("In general, a plaintiff may not recover under both § 605 and § 553 as it is highly unlikely that a pirate used a satellite dish and a cable box to broadcast a single program simultaneously." (internal citations omitted)); *J & J Sports Prods., Inc. v. Just Fam, LLC*, No. No. 1:09–cv–03072–JOF, 2010 WL 2640078, at *2 (N.D. Ga. June 28, 2010) ("[W]hen a court determines that a defendant's conduct has violated both sections 553 and 605 of the Communications Act, a plaintiff may recover damages under only one of those section." (quoting *KingVision Pay–Per–View Corp., Ltd. v. Wright*, No. 8:06-cv-892-T-30MAP, 2006 U.S. Dist. LEXIS 78404, at *4–5 (M.D. Fla. Oct. 27, 2006)). It appears Plaintiff understands this; in its proposed order granting default judgment, Plaintiff invited the Court to impose statutory damages for a violation of either § 605 or § 553 but not both. (Doc. 13-3 at 2.)

cable (in violation of section 553). Nor does the Court see how one would know the method by which Defendant intercepted the broadcast, absent a behind-the-scenes investigation of Defendant's establishment, which Plaintiff does not allege occurred. (*See* Kilgore Aff., Doc. 13-2.)

However, it would be manifest injustice for the Court to deny Plaintiff's motion for default judgment when Defendant willfully violated the law and Defendant's refusal to appear in court precludes Plaintiff from discovering the exact method of the theft. *See Kim*, No. 1:11-cv-2388-AT, slip op. at *8. Here, Plaintiff alleges that it held the exclusive license to broadcast the Program, Defendant intercepted this broadcast without paying Plaintiff, and Defendant showed this Program to several of its patrons. Additionally, the Court can presume that Defendant's conduct was willful; a cable signal does not descramble spontaneously.

> Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [defendant] in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain.

*Joe Hand Prods., Inc. v. Leon*, No. 1:06-CV-1180-JOF, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007) (addressing willfulness under section 605) (quoting *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tex. 2002)). Thus, Plaintiff's allegations provide a sufficient basis for holding Defendant liable for the willful violation of

8

either section 605 or 553. *See J & J Sports Prods., Inc. v. Island Jams Entertainment, Inc. d/b/a Minglez Lounge, et al.*, No. 1:12-cv-1510-SCJ, slip op. at 4 (N.D. Ga. Oct. 1, 2012) (citing *Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, No. 3:11-cv-90-CAR, 2011 WL 4102314, at *2 (M.D. Ga. Sept. 14, 2011)).

The main practical difference between these statutes is that section 605 allows for higher statutory damages. Under section 605, a successful plaintiff may seek between $1,000 and $100,000 in statutory damages, with additional damages up to $100,000 for willful violations for commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(c). Section 553, however, provides for between $250 and $10,000 in statutory damages, and only up to $50,000 for willful violations. 47 U.S.C. § 553(c)(3). In any case "both statutes provide a discretionary range of possible damage awards that are, in part, overlapping." *J & J Sports Prods., Inc. v. Tu Mihn Nguyen*, No. 12-cv-2262-LHK, 2012 WL 5412900, at *4 (N.D. Calif. Nov. 6, 2012). Thus, as the Court finds that a statutory award in the same amount is equally appropriate under either statute, (*see infra*), it is immaterial which of these two statutes Defendant violated. *See J & J Sports Prods., Inc. v. Island Jams Entertainment, Inc. d/b/a Minglez Lounge, et al.*, No. 1:12-cv-1510-SCJ (N.D. Ga. Oct. 1, 2012).

The Court has complete discretion in determining the amount of statutory damages to award Plaintiff within the authorized ranges. 47 U.S.C. § 553(c)(3) (observing that court has discretion in determining amount of statutory damages within enumerated range); 47 U.S.C. § 605(e)(3)(c) (same). If Defendant had

lawfully obtained access to publish the May 4, 2013 broadcast, Plaintiff would have charged Defendant as much as $2,200 for that access.  (*See* Gagliardi Aff. ¶ 8, Ex. 1.)  Plaintiff has also spent millions of dollars promoting and protecting its broadcasts.  (*See id.* ¶ 12.)  In addition, the Court takes into account the broadcasting industry's need to deter piracy and interception.  More, while there are no allegations that Defendant charged a premium on drinks or food during the program, Defendant did charge a $40 cover charge for entry, and advertised the illegal broadcast on the internet.  (Kilgore Aff. ¶ 9.)  And the investigator witnessed seventy (70) patrons in the club at the time of the broadcast – meaning Defendant may have collected nearly $3,000.00 in cover charges that night.  (Kilgore Aff. ¶¶ 3)

These facts make the violations at issue here more serious than those present in recent similar cases that the Court has ruled on.  *See J&J Sports Productions, Inc v. AG Alliance, Inc.*, No. 15-cv-1525-AT, Doc. 9 (N.D. Ga. Aug. 27, 2015) (awarding $6,500.00 in statutory damages under Section 605 when only five (5) patrons were present to view the illegal broadcast but when club charged $25 cover charged); *J&J Sports Productions, Inc. v. Glitter's Fitness Club Corporation et al.*, No. 15-cv-3189-AT, Doc. 12 (N.D. Ga., Feb. 2, 2016) (awarding $5,500 in statutory damages when defendant charged $10 cover and there were up to 63 patrons present, but establishment was apparently a fitness center that may not have understood its legal obligations).  Finally, the Court

understands that Defendant had management responsibilities over the establishment, and therefore had a somewhat high degree of culpability.

Typically, this would result in a relatively higher award of statutory damages. However, the Court understands that the Defendant MKD settled its claims with Plaintiff. The Court will not grant an award of damages against K. Christopher Edwards & Company that, when combined with the settlement against MKD, is higher than what the Court would have awarded against a single defendant.

Based on these considerations, the Court finds it appropriate to assess from Defendant $2,000 under 47 U.S.C. § 553(c)(3)(A)(ii) and $2,000 under 47 U.S.C. § 553(c)(3)(B).

### IV. CONCLUSION

Thus, the Court **GRANTS** Plaintiff's Motion for Reconsideration [Doc. 17] and Plaintiff's Motion for Default Judgment, [Doc. 13], and awards statutory damages in the amount of $4,000.00. The Court further finds that Plaintiff is entitled to an award of its attorney's fees and costs incurred. Plaintiff attached to its Motion an invoice documenting $1,930.00 in attorney's fees and costs. Most of the hours billed relate solely to K. Christopher Edwards and Company. However, a number of the hours billed had no indication if they were for activities solely related to K. Christopher Edwards and Company or (more likely) were billed for activities that related to both defendants. And the Court understands that the settlement agreement with Defendant MKD included no

breakdown relating to fees or a specific award for fees. Given these two facts, the Court finds that an award of $1,200.00 in attorney's fees is reasonable. Accordingly, the Clerk is **DIRECTED** to enter judgment in Plaintiff's favor against Defendant K. Christopher Edwards and Company, Inc. for $5,200.00.

Plaintiff has also indicated that it has settled this matter as to Defendant MKD Nightlife Ventures, LLC and that the settlement is structured so that Plaintiff will receive a stream of periodic payments until August 18, 2016. Plaintiff has promised to file a dismissal with prejudice on or before that date. The Clerk is therefore directed to **ADMINISTRATIVELY CLOSE** this matter. Plaintiff is **DIRECTED** to file a dismissal of this action by August 18, 2016. The Clerk is **DIRECTED** to submit this matter to the undersigned on August 19, 2016 only if Plaintiff has failed to file its dismissal.

**IT IS SO ORDERED** this 7th day of June, 2016.

_____
**Amy Totenberg**
**United States District Judge**